UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:19-CR-120-TAV-HBG |
| JAMES LEE MELTON, | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the Court on Defendant James Lee Melton's Motion for Release: Changed Circumstances [Doc. 14], which was filed on March 17, 2020, and referred [Doc. 15] to the undersigned on March 20, 2020. Defendant Melton is detained at the R.A. Deyton Detention Facility ("R.A. Deyton") in Lovejoy, Georgia, pending his sentencing hearing on June 18, 2020.[1] The Defendant asks for a detention hearing and temporary, emergency release to home confinement and the supervision of a third-party custodian until the end of the COVID-19 pandemic. The Defendant requests release pursuant to 18 U.S.C. § 3142(i), which provides that

> [t]he judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

The Defendant argues that the COVID-19 pandemic provides a "compelling reason" for his release, because he has a chronic health condition (type 2 diabetes), which creates a higher risk that he will become seriously ill or die, if he contracts COVID-19. He maintains that it is

---

[1]The Defendant has recently moved [Doc. 26] to continue the detention hearing thirty (30) days, to give defense counsel additional time to prepare.

impossible for R.A. Deyton to control the spread of COVID-19, due to the constant influx of employees and new inmates, the close quarters, the inability to maintain proper hygiene, and the nature of the virus, which is transmitted through the air.

The Court held a hearing on the motion with Defendant appearing via videoconference on May 11, 2020. Assistant United States Attorney Alan Scott Kirk appeared on behalf of the Government and was present in the courtroom. Assistant Federal Defender Mary Margaret Kincaid represented Defendant Melton and appeared by video. Along with the parties' filings[2] and arguments, the Court has considered the Presentence Investigation Report [Doc. 11] and the May 6, 2020 supplemental memorandum by United States Probation Officer Travis Worthington.

Although the undersigned sympathizes with the Defendant's concerns about contracting the COVID-19 virus, the Court finds the Defendant has failed to carry his burden of showing that he is not a danger if released. Additionally, the Defendant has not shown clear evidence of a compelling reason for his release pending his sentencing hearing. Accordingly, for the reasons discussed herein, the undersigned recommends that the Defendant remain detained.

I. **PROCEDURAL POSTURE AND APPLICABLE LAW**

On August 8, 2019, Defendant Melton appeared before the undersigned for an initial appearance on an Information.[3] The Defendant waived and reserved [Doc. 6] his right to a

---

[2] In addition to the Defendant's motion [Doc. 14], the Court has considered the Government's response in opposition [Doc. 17] and the Defendant's reply [Doc. 19]. On May 8, 2020, the Defendant filed under seal [Doc. 25] approximately three hundred pages of his medical records to establish his medical condition. The Defendant also filed eleven pages of expert materials opining that individuals with type 2 diabetes are vulnerable both to contracting COVID-19 and to serious complications and death from the virus.

[3] Defendant Melton was indicted for the instant offense in case number 3:19-CR-67. At his April 26, 2019 initial appearance on the Indictment, the Defendant waived [Doc.7] his right to a detention hearing. Additionally, the Court observes that the Defendant is scheduled for an initial

2

detention hearing, and the Court ordered that he be detained [Doc. 7] pending further proceedings. Later that same day, the Defendant entered a plea of guilty to the Information charging him with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). At the conclusion of the change of plea hearing, United States District Judge Thomas A. Varlan remanded the Defendant into custody.

Because the Defendant has entered a guilty plea, his release or detention pending sentencing is governed by 18 U.S.C. § 3143(a). This statute requires that a person found guilty of an offense, except when no term of imprisonment is recommended, must be detained, unless the judge "finds by clear and convincing evidence the person is not likely to flee or pose a danger to the safety of any other person or the community if released[.]" 18 U.S.C. § 3143(a)(1). "The burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant." Fed. R. Crim. P. 46(c).

The Government argues that Defendant Melton falls within subsection (2) of § 3143(a), because he faces a maximum sentence of life imprisonment under the Armed Career Criminal Act ("ACCA"). The Bail Reform Act provides that detention between a finding or plea of guilty and sentencing is mandatory in certain cases, such as when a defendant faces a life sentence, unless

> (A) (i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or
>
> (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; **and**
>
> (B) The judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

---

appearance on an Amended Petition for Warrant for Offender Under Supervision [Doc. 105] on June 18, 2020. The Defendant will have a revocation hearing in case number 1:16-CR-10 in conjunction with his sentencing hearing, later that day.

18 U.S.C. § 3143(a)(2) (emphasis supplied); *see also* 18 U.S.C. § 3142(f)(1)(B). Neither of the conditions in § 3143(a)(2)(A) apply in this case. Thus, if Defendant Melton is facing a maximum sentence of life in prison, detention is mandatory unless he can meet the more stringent requirements in § 3145(c). "A person subject to detention pursuant to section 3143(a)(2) . . . *and* who meets the conditions of release set forth in section 3143(a)(1) . . . may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c) (emphasis added). Accordingly, a defendant appealing an order of mandatory detention must show (1) clear and convincing evidence that he or she is not likely to flee or to be a danger and (2) clear evidence of exceptional reasons why he or she should not be detained. 18 U.S.C. § 3145(c).

    Defendant Melton argues that he is not facing a life sentence and the ACCA does not apply in this case, because his prior convictions for aggravated burglary all occurred on the same day. The Court finds it is not necessary to determine whether Defendant Melton falls under subsection (1) or (2) of § 3143(a), because under both he must show by clear and convincing evidence that he is not a danger or a flight risk. As discussed in detail below, the Court finds Defendant Melton cannot make it over this initial hurdle. However, the Court will also discuss whether COVID-19 and the Defendant's type 2 diabetes create a compelling reason for his release under § 3142(i).

## II. ANALYSIS

Defendant Melton argues that he is not a flight risk or a danger and that his vulnerability to serious illness or death if he contracts COVID-19 presents a compelling reason for his release. The Defendant asks to be placed on home confinement under the supervision of a third-party

4

custodian. The Defendant offers his sister Autumn Melton as his third-party custodian. Ms. Melton is temporarily residing in the home of a cousin, while the property upon which she and the Defendant intend to live is in probate. The Defendant proposes that he live in a camper, to be purchased by Ms. Melton and located on the property of his cousin. The Defendant argues that R.A. Deyton has had two cases of coronavirus (an inmate and a guard),[4] likely has many unconfirmed cases, and cannot prevent the spread of COVID-19. He argues the serious risk that he will suffer life-threatening complications from COVID-19, if the virus spreads through the jail, provides a compelling reason for his release.

**A. Flight Risk or Danger**

In analyzing whether there are conditions of release that would reasonably assure the appearance of the Defendant at further proceedings and the safety of others and the community, the Court must evaluate the information presented by the parties in light of the factors in 18 U.S.C. § 3142(g). These factors are (1) the nature and circumstances of the charged offense; (2) the weight of the evidence against the Defendant, (3) the Defendant's history and characteristics, and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [Defendant's] release." 18 U.S.C § 3142(g)(1)-(4). Additionally, in an April 6, 2020 Memorandum, United States Attorney General William Barr stated that "the current COVID-19 pandemic requires that we also ensure we are giving appropriate weight to the potential risks facing certain individuals from being remanded to federal custody." *See* Memorandum for All Heads of Department Components and All United States Attorneys, *Litigating Pre-Trial Detention Issues During the COVID-19 Pandemic*, April 6, 2020, *available*

---

[4] At the May 11 hearing, AUSA Kirk informed the Court that one inmate and two guards from R.A. Deyton have tested positive for COVID-19.

*at* https://www.justice.gov/file/1266901/download.  Thus, the Court considers the (g) factors, keeping in mind the risks associated with the COVID-19 pandemic.

Regarding the first factor, which is the nature and circumstances of the offense, 18 U.S.C. § 3142(g)(1), the Court finds that in the instant case, the Defendant entered a guilty plea to being a convicted felon in possession of a firearm.  This offense involves a firearm, which is specifically noted for consideration under the first factor.  18 U.S.C. § 3142(g)(1).  The Defendant argues that the type of firearm he possessed, a .22 caliber rifle, is a hunting rifle[5] and not a dangerous weapon.  However, the circumstances of the offense are not limited to type of firearm the Defendant possessed.  According to the factual basis in the plea agreement [Doc. 2], the Defendant's sister Juanita Melton told a Monroe County Sheriff's deputy that the Defendant had been firing the rifle on his property.  According to the Presentence Investigation Report, Juanita Melton also told the deputy that the Defendant had threatened her and pointed the rifle at her earlier that week.[6]  The Court finds both the nature and the particular circumstances of the offense support the Defendant's continued detention.

The Court next considers the weight of the evidence against the Defendant.  18 U.S.C. § 3142(g)(2).  Our appellate court has instructed that "[t]his factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt."  *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010).  The Court observes that Defendant Melton

---

[5]At the May 11 hearing, defense counsel argued that a .22 caliber rifle is only used for target practice and not for hunting.  However, this assertion contradicts the Defendant's argument in his motion ("a .22 caliber rifle . . . is the type of gun used typically for hunting") [Doc. 14, p.4].

[6] The Defendant disputes Juanita Melton's statement that he pointed a gun at her, claiming that Ms. Melton is not credible and that she wanted him in jail so that she would have a better chance of inheriting the property.  The Defendant offered no evidence in support of this contention.  However, the Defendant admitted that he possessed a rifle, so factor (g)(1) supports detention, even apart from the statement by Juanita Melton.

6

has two prior convictions for driving under the influence, the second of which involved the Defendant fleeing the scene and hitting another car, resulting in a conviction for vehicular assault. While on probation for the second DUI and vehicular assault, the Defendant was arrested for assault and domestic violence, after assaulting his mother when he returned home intoxicated. The Defendant was also convicted of assault, when he attempted to pin a law enforcement officer between his vehicle and a police car and then drove into a second police car. The Court observes that the Defendant's 2017 federal conviction for felon in possession of a firearm involved him walking along the road carrying a rifle and reportedly pointing the rifle at a passing car.[7] The Court finds the evidence of the Defendant's dangerousness is strong.

The third factor relates to the Defendant's history and characteristics to include his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). The Court begins with the Defendant's physical condition. The Government does not contest that the Defendant has type 2 diabetes for which he receives daily insulin injections. When weighing a defendant's physical condition, "the medical risks associated with individuals being remanded into federal custody during the COVID-19 pandemic" should be

---

[7] Defendant Melton also requested release after he entered a guilty plea to felon in possession of a firearm but before sentencing in his prior federal case [*see* No. 1:16-CR-10, Doc. 19]. On June 24, 2016, United States Magistrate Judge Christopher Steger denied release pending sentencing [No. 1:16-CR-10, Doc. 30]. Judge Steger related that the Government played a 911 call from a concerned citizen reporting a man walking along the road with a rifle, yelling, and that the man pointed the rifle at a vehicle [No. 1:16-CR-10, Doc. 30, p.3]. Judge Steger made no finding with regard to whether the Defendant pointed his rifle at a passing car but found his extensive criminal record involved convictions "for crimes which, by their very nature, created a danger to other persons in the community" [No. 1:16-CR-10, Doc. 30, p.3].

7

considered as a part of the defendant's "physical and mental condition." *See* Memorandum for All Heads of Department Components and All United States Attorneys, *Litigating Pre-Trial Detention Issues During the COVID-19 Pandemic*, April 6, 2020, *available at* https://www.justice.gov/file/1266901/download. In the instant case, the Court finds the Defendant's type 2 diabetes makes him more vulnerable to serious illness and potentially death, if he contracts COVID-19. However, the Court also observes that the Defendant presented no plan for how he would receive his daily insulin injections and who would monitor his blood sugar levels, if he is released. The record before the Court reflects that the Defendant did not properly manage his diabetes before his arrest on the instant offense [*see* Presentence Investigation Report, Doc. 11, p.15, ¶42]. The Court will discuss in more depth the medical risk to Defendant Melton in the next section; however, the Court finds that the Defendant's diabetes is controlled and monitored, while he is detained, and the Court has no confidence that his diabetes would be controlled and monitored, if the Defendant were released.

Defendant Melton has a lifelong residence in the district and has the support of his sister Autumn Melton. However, the Court agrees with the Government and the United States Probation Office that the Defendant has not shown that he has a stable place to live, if released. Ms. Autumn Melton is currently displaced from her home and living in a room in her cousin's house with his family. The Defendant proffered that Ms. Melton could obtain a camper, which the Defendant's cousin would allow to be parked on his property. The Court finds this option to be more idea than reality and, thus, not a stable residence for the Defendant.[8] The Court credits Ms. Autumn Melton for her willingness and careful consideration of whether she could be a third-party custodian for her brother. However, the Court finds the Defendant's past conduct

---

[8] The Court agrees with the Defendant that, under some circumstances, a camper could be a suitable residence. In the instant case, it is the theoretical, rather than the humble, nature of this proffered residence that gives the Court doubt.

indicates that he would not abide by her directions or that of the Court. The Defendant has numerous probation violations and violations of supervised release. Moreover, the Defendant's criminal history is replete with instances when he fled law enforcement and he was arrested for failure to appear in 2016. These characteristics show the Defendant to be a flight risk.

The Court also finds the Defendant's criminal history and past conduct show him to be a danger to others and the community. As discussed above, in addition to four convictions for aggravated burglary, the Defendant has multiple convictions for assault and DUI. The Defendant also has arrests for assault by domestic violence and aggravated assault. *See United States v. Tolbert*, Nos. 3:09CR56 & 3:10CR30, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017) (holding the court may consider arrests but may give them lesser weight). Many of the Defendant's prior offenses were committed while he was intoxicated. The Defendant argues that he stopped drinking in 2015, due to his diabetes. However, the Defendant has two prior convictions for possession of marijuana, and he tested positive for methamphetamine and marijuana on January 18, 2019, a few months before he went into custody for the instant offense. This indicates the Defendant is a danger and supports detention in this case.

Finally, under the pertinent part of 18 U.S.C. § 3142(g)(4), the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." The Defendant's criminal history spans thirty years and reveals the Defendant's disregard for individuals and the community. Although the Defendant argues that his most significant criminal history occurred thirty years ago, when he was a teenager, the Court finds that the Defendant tested positive for methamphetamine approximately three months before he went into custody in April 2019. The Presentence Investigation Report reveals that the Defendant has pointed a gun at a family member and a passing motorist. This factor weighs solidly in favor of detention.

Rather than the Defendant demonstrating by clear and convincing evidence that he is not a danger or likely to flee, the information before the Court shows by clear and convincing evidence that the Defendant is both a danger and a flight risk. The Court has considered the conditions proffered by the Defendant, which are that he be placed on home confinement and that his sister Autumn Melton supervise him as his third-party custodian. The Court finds the proposed conditions would not reasonably assure the Court of the safety of the community or the Defendant's appearance for further proceedings in this case.

### B. Compelling Reasons under § 3142(i)

The Defendant argues that his type 2 diabetes places him at risk of experiencing serious and potentially life-threatening complications, if he contracts COVID-19. He contends that COVID-19 presents an increased threat in jails because of the close quarters, the inability to maintain proper social distancing, and the limited ability to maintain hygiene. Defendant Melton asserts that the efforts made by R.A. Deyton to prevent the entry or spread of COVID-19 are insufficient, because the virus can be transmitted as an aerosol by asymptomatic individuals, including jail staff who come and go from the facility daily. Moreover, the Defendant points to the three cases (one inmate and two guards) of COVID-19 at R.A. Deyton and argues there are likely more undetected cases at the facility, because there is no indication that the facility is testing asymptomatic inmates. The Defendant maintains that the risk of his contracting COVID-19 in the jail and the risk of him having serious or deadly complications due to his diabetes presents a compelling reason for his release to home confinement.

Defendant Melton is currently detained at R.A. Deyton. The Court also finds that R.A. Deyton had one inmate test positive for COVID-19. That inmate was placed in quarantine more than a month ago, and the facility has had no other instances of inmates testing positive for

10

COVID-19. The facility has also had two guards test positive for COVID-19, but the Court has no details regarding those cases.

The Court is sympathetic to Defendant's concerns and acknowledges the unprecedented nature of COVID-19 pandemic and its effect nationwide and within Tennessee. "[A]s acknowledged by the Centers for Disease Control and Prevention ("CDC"), incarcerated individuals face an even greater risk of transmission, given the conditions frequently present in correctional and detention facilities." *United States v. Terry Pruitt*, No. 17-CR-20183-4, 2020 WL 1698661, at *6 (E.D. Mich. Apr. 8, 2020) (citing *United States v. Kennedy*, No. 18-20315, 2020 WL 1493481, at *2 (E.D. Mich. Mar. 27, 2020)). "These conditions include, among other things, the highly congregational environment, the limited ability of incarcerated persons to exercise effective disease prevention measures (e.g., social distancing and frequent handwashing), and potentially limited onsite healthcare services. *Id.*

However, "a defendant should not be entitled to temporary release . . . based solely on generalized COVID-19 fears and speculation." *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). Instead, "the court must make an individualized determination as to whether COVID-19 concerns present such a compelling reason in a particular case that temporary release is necessary[.]" *Id.*; *see, e.g.*, *Pruitt*, 2020 WL 1698661 at *6 (holding that "[w]hile the generalized risks of COVID-19 cannot be disputed, courts evaluating whether pretrial release is necessary must evaluate the particularized risks posed to an individual defendant.") (citing *United States v. Lee*, No. 19-20112, 2020 WL 1540207, at *3 (E.D. Mich. Mar. 30, 2020)).

As the Court previously detailed in *United States v. Haun*, No. 3:20-cr-24-4 (E.D. Tenn. Apr. 10, 2020) [Doc. 31], the Court will adopt the reasoning of the Eastern District of Michigan

11

and evaluate "the impact of COVID-19 on the pretrial release calculus . . . [under] the following four factors:

> (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

*Pruitt*, 2020 WL 1698661, at *6 (citing *Clark*, 2020 WL 1446895, at *2). Like Defendant Melton, the defendant in *Pruitt* sought temporary release pursuant to 18 U.S.C. § 3142(i), and the court found that "these factors have been applied in the context of motions for release under 18 U.S.C. § 3142(i)[.]" *Id.* As noted above, under 18 U.S.C. § 3142(i), the Court may "permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."

First, with respect to the grounds for the Defendant's pretrial detention, the Court has weighed the § 3142(g) factors and finds they demonstrate that Defendant Melton presents a danger to the community and a flight risk and that no condition or combination of conditions would reasonably assure the safety of the community or the Defendant's appearance at other proceedings in this case. This factor weighs decidedly in favor of Defendant's continued detention.

Next, the Court considers the Defendant's specific COVID-19 concerns. Defendant Melton has established that he has type 2 diabetes. The Court acknowledges that this condition places him at an increased risk if he contracts COVID-19. *See United States v. Patino*, No. 18-CR-20451, 2020 WL 1676766, at *5 (E.D. Mich. Apr. 6, 2020); *see also* Affidavit of Steven Edelman, M.D. & American Diabetes Association letter [Doc. 25, SEALED].

However, the Court also considers the measures in place at R.A. Deyton to mitigate exposure to the virus. The Government detailed [Doc. 17] the procedures in place at the detention facility to ensure the safety of the inmate population, staff, and visitors. First, upon arrival at the detention facility, all inmates are screened and are housed in a separate location from the general population for two weeks. In addition to screening new inmates upon arrival, R.A. Deyton screens all inmates and staff. Symptomatic inmates are isolated from the general population and tested for COVID-19.[9] Visitors are no longer allowed at the facility, since at least the end of March, and R.A. Deyton has issued tablets to the inmates so they may have video visitation. Inmate movement within and out of the facility has been minimized as much as possible. The facility "has implemented enhanced cleaning protocols for both inmates and staff, stocked extra cleaning supplies, and are cleaning facilities more frequently" [Doc. 17, p.5]. The Court finds that R.A. Deyton is taking measures to prevent an outbreak of COVID-19 in the facility.

In the instant case, the detention facility has had one inmate and two guards test positive for COVID-19. However, the facility isolated the infected inmate, and there are no other confirmed cases within the inmate population. The Court does not know the details of the two guards who were diagnosed with COVID-19, but based upon the policies outlined by the Government, the Court infers that they are not permitted in the facility during their quarantine period. The Court has no evidence that the detention facility could not provide the Defendant with adequate medical care or transport him to a hospital if he became seriously ill. *See Clark*, 2020 WL 1446895, at *6. The Court finds that the medical staff at R.A. Deyton are monitoring

---

[9] At the hearing, counsel for Defendant Melton speculated that R.A. Deyton is not testing inmates for COVID-19. However, this contention is contradicted by the fact that an inmate *tested* positive for COVID-19, the Government maintains that the facility is testing symptomatic inmates [Doc. 17, p.6], and the Defendant's own reply brief states that an employee in the medical ward "confirmed they do have test kits" [Doc. 19, p.9].

and treating the Defendant's type 2 diabetes. The Court also notes that Defendant Melton was wearing a mask during the hearing.

The Court has located two cases in which the Northern District of Georgia released defendants from R.A. Deyton based, in part, upon COVID-19 concerns. In *United States v. Travis Boslton*, the court released the defendant pending his revocation hearing on a petition for violation of supervised release, due in part to the recommendation that state and federal courts reduce the population of detention facilities by releasing inmates not posing a serious risk of danger. No. 1:18-CR-382-MLB, Doc. 20, pp.5-6 (N.D. Ga. Mar. 30, 2020) (noting that one defendant taken to R.A. Deyton had tested positive for COVID-19) (no electronic legal citation available). In *Bolston*, the court stressed its finding of clear and convincing evidence that the defendant would not pose a danger. *Id.* at 5.

In *United States v. Ullings*, the Court reduced the sentence[10] of and released a 66-year-old defendant with hypertension and obesity: "The Court reaches its decision based on the specific, arguably unique, facts presented by Ms. Ullings's medical condition, the circumstances leading to her criminal conviction, her other personal circumstances, the sentence she received and that she has already served, and the specific conditions of her current incarceration (including the circumstances the Court witnessed during two videoconference hearings)." *Id.* at *5. The court found the government's claim that R.A. Deyton had adopted social distancing measures, like having inmates eat in their cells, was contradicted by the defendant's declaration that inmates only ate in their cells for a short time and were now eating and spending most of

---

[10] Defendant Ullings was sentenced to eight months of incarceration on January 23, 2020, but was not transferred from R.A. Deyton to a Bureau of Prisons ("BOP") facility, because the BOP has temporarily suspended prisoner transfers during the COVID-19 pandemic. *Ullings*, 2020 WL 2394096, at *1.

14

Case 3:19-cr-00120-TAV-JEM   Document 27   Filed 05/14/20   Page 14 of 17
PageID #: 994

their time in a common room.  *Id.* at 4.  The court noted its observation of two guards from R.A. Deyton not properly wearing masks during the video hearing.  *Id.* at 5.

The court's observations in the *Ullings* case raise some concern about the mitigating measures at R.A. Deyton.[11]  However, the Court also observes that the one inmate who tested positive for COVID-19 was quarantined and recovered.  Although Defendant Melton has a heightened risk of serious illness, if he contracts COVID-19, he has failed to demonstrate how the measures in place at the detention facility are insufficient to mitigate his risk of contracting the virus or to care for him if he did.  In summary, the Court finds that the Defendant has specific concerns regarding COVID-19 that weigh in favor of release, but the mitigating measures in place at the detention facility indicate that this risk can be managed.

Next, the Court reviews whether the proposed conditions of release are tailored to mitigate or exacerbate other COVID-19 risks to the Defendant.  Defendant Melton proposes to be confined to a camper outside the home of his cousin and for his sister Autumn Melton to serve as his third-party custodian.  Although these conditions, if followed, would allow the Defendant to be isolated from others and, thus, protect himself from COVID-19, the Court has little confidence the Defendant would abide by his conditions of release based upon his past behavior.  The Court also observes that the Defendant has presented no plan on how he would manage his type 2 diabetes.  Accordingly, the Court finds this factor is neutral, supporting neither detention or release.

Lastly, the Court finds Defendant's proposed conditions of release would increase the risk to others of contracting COVID-19.  As previously discussed, the Defendant has not abided by the terms of other conditional release.  "A defendant who is unable to comply with conditions

---

[11] The Court notes that Defendant Ullings is female and was detained in a separate section of R.A. Deyton than Defendant Melton.

15

of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody." *Clark*, 2020 WL 1446895, at *7; *see, e.g.*, *United States v. Aiad-Toss*, No. 19-00521, 2020 WL 1514482, at *2 (N.D. Ohio Mar. 30, 2020). In the instant case, the Defendant offered that if the Government is concerned that he would possess drugs or guns while on release, then the probation officer could search his residence frequently. The fact that this Defendant would need frequent, on-site supervision further raises the risk to the probation officer, as does the Defendant's established inability to follow the conditions of his release. The Court finds that this factor weighs in favor of detention.

A review of the combined *Pruitt* factors weighs in favor of Defendant's continued detention. The Defendant's type-2 diabetes places him at an increased risk of severe illness, if he did contract COVID-19, and R.A. Deyton has one prior case of COVID-19 in an inmate and two cases in guards. Thus, the risk to Defendant Melton is not entirely speculative. However, the Court must balance this risk against Defendant Melton's dangerousness to the community, the existence of protective measures at the detention facility, and the risk that he could also contract COVID-19 on release and pass it on to others. Moreover, the Court is doubtful that the Defendant would manage his diabetes, while on release, a factor which also endangers Defendant Melton. The Court acknowledges that this is a closer case than those the Court has previously examined in evaluating whether the risk of COVID-19 is a compelling reason for release. Nevertheless, the danger to the community and the Defendant's past disregard for conditions imposed on him tip the balance in favor of detention in this case. Accordingly, the Court finds the Defendant has not shown a compelling reason warranting his release pending sentencing.

16

Case 3:19-cr-00120-TAV-JEM    Document 27    Filed 05/14/20    Page 16 of 17
PageID #: 996

### III.    CONCLUSION

In summary, the Court finds that Defendant Melton has failed to demonstrate that he is not a flight risk or a danger and has failed to show a compelling reason why mandatory detention should not apply. For the reasons stated herein, the undersigned **RECOMMENDS** the Defendant remain detained pending his sentencing hearing and that his Motion for Release: Changed Circumstances [Doc. 14] be denied.[12]

Respectfully submitted,

*/s/ Bruce Guyton*

_____
United States Magistrate Judge

---

[12] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).